## Case No. 14,620.

### UNITED STATES v. BOJORQUES.

[Hoff. Op. 55; Hoff. Dec. 2.]

District Court, N. D. California. 1859.

**MEXICAN LAND GRANT — SURVEY — BOUNDARIES — PETITION.**

[Before the court will disturb or set aside a survey made by the surveyor general under the law of 1851, it must be satisfied that the decree of confirmation has been plainly departed from, or that some clear and obvious error has been committed.]

[This was a claim by Bartholomeo Bojorques to the rancho of Laguna de San Antonio. Heard upon objections to survey.]

HOFFMAN, District Judge. This case comes up on objections filed to the survey of the rancho of Laguna de San Antonio made by the surveyor general. The land granted is described in the petition and grant as of six leagues in extent, and bordering towards the southeast on Juan Martin, towards the northwest on the two rocks (Las Dos Piedras), towards the southwest on Las Tomales, and towards the northeast on Juan Miranda. The diseño, which is drawn with somewhat more than usual skill, shows that the tract solicited was a right-angled parallelogram, three leagues in length and two leagues in width.

The survey returned into court preserves the form of the tract indicated by the diseño, with the exception of a deflection in the eastern line, which is made to run along the Arroyo de San Antonio, and along the margin of the laguna of the same name, so as to correspond with the western boundary of Juan Miranda, as indicated on the diseño of the latter. The survey is objected to on the ground that the southern line is improperly located; that it should be run more to the south or less to the west; and as it is admitted that the tract must be a parallelogram, with all its angles right angles, that it must be two leagues wide by three leagues long, and that its northerly line must pass through the noted natural object, known as "Las Dos Piedras," the only mode in which the survey could be altered to meet the objection would be to swing round the parallelogram on Las Dos Piedras, as on a pivot, in such a way as to preserve the parallelism of the boundaries, but to give the proposed direction to the southern line,—to which, by the location suggested, the northern line would be made parallel, and the eastern and western lines perpendicular. The reasons for this change are chiefly contained in the deposition of Mr. Benitz. This witness testifies that he made the diseño presented by the claimant. That the southern line was desired by him and intended by the witness. He represented it as a range of hills the general direction of which is considerably to the south of the direction of the southern line as run by the surveyor general. He further states that the compass used by him was defective, and that the points of the compass, as laid down on the diseño, are inaccurate.

On this testimony the court is asked to adopt the range of hills as the southern boundary; and preserving, as before stated, the dimensions of the tract and the directions of the lines relatively to each other, to locate the surveys by adopting the range of hills as a base, and erecting the parallelogram upon it. It has already been stated that the tract is described in the grant as bordering towards the S. E. on Juan Martin. The range of hills is not mentioned as the southern or southeastern boundary. In Juan Martin's grant the northern boundary is described as "a narrow cañada adjacent to the low hills," and Mr. Matthewson, a witness called in opposition to the survey, states that the sobrante between the Juan Martin, Bajorque, Mivanda and Olimpale ranches has been granted, and that all the land, if any, which lies between Juan Martin and Bajorque, would be embraced by it. It appears, therefore, that the range of hills claimed to be the southern boundary of this tract is not called for by the grant itself, or the accompanying diseño, nor by the grant or diseño in the case of Juan Martin, and that a sobrante grant has been made, which will include what low land may be found between the southern boundary

of Bajorque and the northern boundary of Juan Martin; thus indicating that, although the grant to the former was described as bordering on the lands of the latter, it was not contemplated that the southern boundary of the one should necessarily be identical with the northern boundary of the other, but that when the lands were measured a sobrante might result, which could be granted to a third party. If, however, the evidence of Mr. Benitez were the only means of arriving at the true direction of the southern boundary, it ought, perhaps, to be located in accordance with his statement as to the desires of Bajorque, and his own intentions in drawing the diseño. But the diseño itself seems to afford indications of the true direction of that line, which I think should outweigh the evidence of Mr. Benitez as to his intentions in drawing it. In the first place, the lines, as surveyed, precisely correspond with the direction as shown by the arrow or compass mark on the diseño. But to this indication perhaps little importance should be attached, and especially in this case, in view of the statement of Mr. Benitz that his compass was probably inaccurate. 2d. The eastern extremity of the southern line, as surveyed, or the southeastern corner of the tract, is placed at a distance to the south of the Arroyo de San Antonio, nearly exactly corresponding with the position of the corresponding corner of the tract delineated on the diseño. The eastern line, moreover, starting from this corner, and running northwardly, strikes as located by the survey, the arroyo, at some distance from the laguna, out of which it issues,—corresponding in this respect, also, to the indication on the diseño. Whereas, if the southern line was depressed as proposed, the southeast corner would be at a distance from the arroyo far greater than is represented on the diseño; and the eastern line would not strike the arroyo, but the laguna, or would strike the arroyo, if at all, at or near the point where it issues from the laguna. 3d. It is evident that the northern line must pass through the point called "Las Dos Piedras." It must also be at right angles to the eastern boundary. It is also clear that the tract intended to be delineated was three leagues in length by two in width. If, then, the range of hills be taken as the southern boundary, and the eastern boundary to be drawn from the eastern extremity of the southern line so located, and be produced until it reaches a point from which the northern line may be drawn at right angles to it, so as to pass through the Las Dos Piedras, the length of such eastern line would be about four leagues,—contrary to the obvious and clear indications of the diseño which shows, as before stated, the length of the tract to be only three leagues.

For these reasons I am of opinion that it has not been so satisfactorily shown that the location is erroneous as to justify me in set-

ting it aside. In this, as in similar cases, it is difficult and almost impossible for the court, obliged to learn through depositions the natural features of a tract which it has never seen, and of which no topographical map is exhibited, to arrive at any certain or satisfactory conclusions as to the true locality of various lines. That duty is properly confided to the surveyor, who, on the ground, compares the calls of the grant and the indications of the diseño with the natural monuments of the country before him, and who, assisted by information obtained on the spot, and such as may be derived from consulting the grants and diseños of colindantes or adjoining proprietors, is able to give a more just location to the survey than this court can hope to arrive at. In the case of Haydel v. Du Fresne, 17 How. [58 U. S.] 30, it is remarked by the supreme court: "Great confusion and litigation would ensue if the judicial tribunals, state and federal, were permitted to interfere and overthrow the public surveys on no other ground than an opinion that they could have the work in the field better done, and divisions more equitably made, than the department of public lands could do." These observations apply with much force to the cases which are now being brought before this court. By the law of 1851 [9 Stat. 631], as well as by the nature and circumstances of the case, much discretion is confided to the surveyor general. Before the court should disturb or set aside a survey made by him, it ought to be satisfied that the decree of confirmation has been plainly departed from, or that some clear and obvious error has been committed. I do not consider that the evidence justifies such a conclusion with regard to the survey and location before the court. An order overruling the objections and approving the survey must therefore be entered.